COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Ortiz and Senior Judge Clements
Argued at Front Royal, Virginia

UNPUBLISHED

DARLIN YULITZA RIVAS MARTINEZ

MEMORANDUM OPINION[*] BY

v.      Record No. 1162-22-4      JUDGE DANIEL E. ORTIZ
JULY 25, 2023

ARLINGTON COUNTY
 DEPARTMENT OF HUMAN SERVICES

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Louise M. DiMatteo, Judge

James C. Martin (Martin & Martin Law Firm, on briefs), for
appellant.

(Jason L. McCandless, Assistant County Attorney; Molly H.
Newton, Guardian ad litem for the minor child; Newton Turner
PLLC, on brief), for appellee. Appellee and Guardian ad litem
submitting on brief.


Darlin Yulitza Rivas Martinez (mother) appeals the circuit court's dispositional order

finding that her minor child was abused or neglected and its order terminating her parental rights to

the child and approving the foster care goal of adoption. On appeal, mother argues that Arlington

County Department of Human Services (the Department) failed to prove that the child was abused

or neglected. Mother also challenges the circuit court's order terminating her parental rights under

Code § 16.1-283(E)(iv). We find no error and affirm the decision of the circuit court.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

Mother and David Rivas (father) are the biological parents to the child, who was almost three months old at the time of removal.[1] The child came to the Department's attention after it received a report that the child was hospitalized with "suspicious" injuries. Mother and maternal grandmother brought the child to the hospital because the child was not moving his arm. The child's x-ray revealed an acute distal humerus fracture of the left arm, which raised "concern for suspicious, non-accidental injury, because significant force would be required to fracture [the child's] arm," as "bones are very flexible in babies." The child also "had petechiae-type bruising under [the] right eye and [the] eyeball was opaque with no reflexes," and the treating doctors were concerned the child possibly lost vision in the right eye due to the injury. Doctors admitted the child to the hospital due to the severity of the injuries. The following day, the Department received another report that the child had additional fractures, including fractures to the ribs and clavicle.

The Department interviewed mother, who reported the injuries may have occurred when the child almost fell during bathing, and mother grabbed the child's arm to prevent him from hitting the ground. Mother reported that the child did not fall on the floor or onto any objects, because she was able to catch the child before he hit the ground. The Department determined that mother's "explanations were not consistent with the severity of the child's injuries."

In a later interview, mother reported that she "remembered" that the child had hit his ribs on the side of the baby tub when falling, which she thought could have caused the rib fracture. Mother also stated that she believed the child rolled over while she was holding him on her lap, which she indicated could have caused the clavicle fracture. The police then interviewed father, who stated mother's bathtub story was false and that the child was injured while father was holding him and the

---

[1] Father signed an entrustment agreement and an order voluntarily terminating his parental rights.

child kicked and fell to the ground. The police later interviewed mother, and she admitted the bathtub story was false and that she was in the bathroom when the child fell out of father's arms.

Based on the severity of the child's injuries and mother's "incongruent explanations," the Department petitioned for emergency removal of the child. On August 5, 2020, the Arlington County Juvenile and Domestic Relations District Court (JDR court) entered an emergency removal order and placed the child in the custody of the Department. The JDR court entered an adjudicatory order finding abuse and neglect. The JDR court found that mother and father subjected the child to "aggravating circumstances" under Code § 16.1-278.2, but ordered the Department to continue to make reasonable efforts to return the child home.

Following removal, the child underwent several medical treatments and consultations. The child received physical therapy for his arm and had multiple visits with the ophthalmology team to address the complicated eye condition. The child's home routine included patching the eye for four hours daily, applying eye drops, and regular maintenance of the child's special contact lens.

After the child entered foster care, the Department recommended mother complete a psychological evaluation to determine her capacity to parent. The Department also recommended that mother engage in individual therapy, take advantage of community supports, receive parenting psychoeducation and mentorship, and participate in activities to counteract her risk of depression. Although mother completed the psychological evaluation, she did not engage in any of the recommended services. Mother acknowledged her trauma history but was unable to articulate how she was addressing her mental health.

The Department required mother to participate in parenting classes, stay in school, and graduate high school. Mother did not engage in the parenting classes and dropped out of school. During this time, the Department financially assisted mother to ensure that she had a phone and transportation. The Department also arranged for swim classes to provide mother "a different

opportunity to engage" with the child. It also coordinated visits between mother and the child. Mother "typically brought other people" to the visitations because "she was not comfortable usually being alone with the visits." Mother's decision to bring others with her to the visitations impeded the Department's ability to assess whether mother could take care of the child on her own, as she looked to other people to take "the lead" with the child during visitations. The Department remained concerned that mother was unable to meet the child's needs.

When mother did not complete the required services, the Department filed a foster care plan with the goal of adoption. On January 15, 2021, the JDR court entered a dispositional order of abuse and neglect. The JDR court terminated mother's parental rights and approved the foster care goal of adoption. Mother appealed to the circuit court.

The circuit court consolidated the appeals of the dispositional order and termination order. The parties convened for hearings at the circuit court on December 2, 2021, and May 23, 2022. At the hearings, the Department presented expert testimony from Dr. William Hauda, a medical director in the forensic department at Inova Fairfax Hospital, who had reviewed the child's medical records and found the child had both acute and healing fractures. Dr. Hauda noted that although the child's arm fracture could have been caused several ways, including through accidental means, the child also had "a bunch of injuries that [were] not accidental." Dr. Hauda opined the child was abused due to his age, his inability to "self-injure . . . easily with a humerus fracture," and that it would be "relatively easy for a care giver to break [the] arm." Dr. Hauda concluded that the child's various injuries could not have all occurred at the same time because the child had both healing fractures and acute fractures.

The Department also presented evidence that while in foster care, the child was "a calm, happy, and funny baby" and was "reaching developmental milestones such as sitting unassisted and grabbing for toys." The child "love[d] dancing" and "jumping up and down on laps, laughing,

when music is played." The child attended day care three times weekly while the foster parent worked. The foster mother testified that support from her own family had been "crucial" to her success with managing her work schedule and all of the child's medical needs.

After hearing the evidence and arguments, the circuit court entered a dispositional order of abuse and neglect. The circuit court approved the foster care goal of adoption and found that it was in the child's best interest to terminate mother's parental rights. Despite the Department's efforts to help mother, the circuit court saw no change in mother. The circuit court found that the child had been in foster care for 18 months and was thriving and the child could not wait for mother to improve her circumstances. The circuit court entered an order for the involuntary termination of mother's residual parental rights for the child under Code § 16.1-283(C)(2) and (E)(iv) and approved the foster care goal of adoption. Mother timely appealed.

## ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). Where the circuit court heard the evidence "*ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

## I. Abuse and Neglect

Mother challenges the circuit court's dispositional order finding abuse and neglect, arguing that the circuit court erred in finding sufficient evidence to constitute abuse or neglect

under "aggravating circumstances" by a "clear and convincing standard."[2]  From the outset,

mother advocates the incorrect standard of review.  Proof by a preponderance of the evidence,

not clear and convincing evidence, is the appropriate standard for abuse and neglect cases.

*Cumbo v. Dickenson Cnty. Dep't of Soc. Servs.*, 62 Va. App. 124, 130 (2013).  Moreover, Code

§ 16.1-228(1) defines an abused or neglected child as any child: "[w]hose parents . . . create[ ] or

inflict[ ], threaten[ ] to create or inflict, or allow[ ] to be created or inflicted upon such child a

physical or mental injury by other than accidental means, or create[ ] a substantial risk of death,

disfigurement or impairment of bodily or mental functions."  Contrary to mother's argument, Code

§ 16.1-228(1) does not require the Department to establish "aggravating circumstances" to prove

abuse or neglect.

Notably, other than to challenge whether the Department presented evidence of aggravating

circumstances, mother conceded during the trial that the circuit court could find abuse and neglect

from the evidence.  Due to mother's concession, it is unnecessary for us to consider this assignment

of error.  *See Bagley v. Commonwealth*, 73 Va. App. 1, 19 (2021) (holding that because the

appellant conceded in the trial court that he was not under arrest at that time, the Court did not need

to consider his assertion to the contrary on appeal).

Nevertheless, we note that, on appeal, mother does not challenge the evidence the

Department presented to the circuit court of the child's extensive injuries as well as Dr. Hauda's

opinion that the injuries did not occur on the same occasion and appeared non-accidental.  The

circuit court also considered mother's multiple inconsistent statements about how the child

---

[2] Mother's first assignment of error seeks to challenge the circuit court's adjudicatory order finding abuse or neglect.  An adjudicatory order, however, is not a final order for appeal purposes, whereas a dispositional order is a final order.  *See* Code §§ 16.1-278.2(D) and 16.1-296(A).  Mother's second assignment of error challenges the circuit court's dispositional order, which we address herein.

sustained the injuries. Considering the totality of the evidence, the circuit court did not err in finding that the child was abused or neglected.

## II. Termination

Mother next argues that the circuit court erred in terminating her parental rights under Code § 16.1-283(E)(iv) and approving the foster care goal of adoption. The circuit court terminated mother's parental rights under Code § 16.1-283(C)(2) and (E)(iv).[3] Each of these subsections provides an independent ground for terminating parental rights. *See City of Newport News Dep't of Soc. Servs. v. Winslow*, 40 Va. App. 556, 563 (2003) (noting that in termination of parental rights cases, alternative findings for termination provide distinct, "individual bases upon which a petitioner may seek to terminate parental rights"). Code § 16.1-283(C)(2) provides for termination where the "parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement." Code § 16.1-283(E)(iv) provides for the termination of parental rights of a parent who "has subjected any child to aggravated circumstances."[4]

---

[3] In her reply brief, mother seeks to challenge termination under Code § 16.1-283(C)(2). We seldom consider arguments "raised for the first time in a reply brief," *Jeter v. Commonwealth*, 44 Va. App. 733, 740 (2005), let alone arguments like this one that are not encompassed in an assignment of error. *See* Rule 5A:20(c)(1); *Riddick v. Commonwealth*, 72 Va. App. 132, 146 (2020).

[4] Code § 16.1-283 defines "aggravated circumstances" as:

> torture, chronic or severe abuse, or chronic or severe sexual abuse, if the victim of such conduct was a child of the parent or a child with whom the parent resided at the time such conduct occurred, including the failure to protect such a child from such conduct, which conduct or failure to protect: (i) evinces a wanton or depraved indifference to human life, or (ii) has resulted in the death of such a child or in serious bodily injury to such a child.

Mother argues that the circuit court erred in finding that the evidence was sufficient to terminate her parental rights under Code § 16.1-283(E)(iv) because the Department failed to establish that she had "subjected any child to aggravated circumstances."[5]  Mother, however, does not address the termination of her parental rights under Code § 16.1-283(C)(2) in her appeal.

Mother's failure to challenge the circuit court's termination decision under Code § 16.1-283(C)(2) renders moot her claims regarding the termination under Code § 16.1-283(E)(iv). Even if this Court were to agree with mother regarding the sufficiency of the evidence to support the termination under Code § 16.1-283(E)(iv), her parental rights would remain terminated because of the circuit court's unchallenged decision to terminate under Code § 16.1-283(C)(2).  *Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 7-8 (2005) (finding that because the appellant had not challenged the court's decision to terminate her parental rights under Code § 16.1-283(E)(i), this Court did not need to address her sufficiency argument regarding termination under Code § 16.1-283(C)(2)).  "[I]n 'situations in which there [are] one or more alternative holdings on an issue,' the appellant's 'failure to address one of the holdings results in a waiver of any claim of error with respect to the court's decision on that issue.'"  *Johnson v. Commonwealth*, 45 Va. App. 113, 116 (2005) (quoting *United States v. Hatchett*, 245 F.3d 625, 644-45 (7th Cir. 2001)); *see Ferguson*

---

[5] For the first time on appeal, mother also challenges the constitutionality of Code § 16.1-283(E)(iv).  "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court."  *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 315 (2013) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)); *see* Rule 5A:18.  Mother asks this Court to consider her argument under the ends of justice exception to Rule 5A:18.  The "ends of justice exception," however, is a narrow one, which is to be used "sparingly when an error at trial is clear, substantial and material."  *Merritt v. Commonwealth*, 69 Va. App. 452, 460 (2018) (quoting *Masika v. Commonwealth*, 63 Va. App. 330, 333 (2014) (internal quotation marks and citations omitted)).  "[T]o bring an argument within the exception 'a[n appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred.'"  *Id.* (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)).  No miscarriage of justice occurred in this case.  Notwithstanding mother's challenge to Code § 16.1-283(E)(iv), mother does not dispute that the circuit court properly entered an order for the involuntary termination of mother's residual parental rights under Code § 16.1-283(C)(2).

*v. Stokes*, 287 Va. 446, 452-53 (2014) (finding that a party must assign error to each articulated basis for a ruling, and the appellant could not prevail where he had not challenged one of three grounds for the decision); *Magco of Md., Inc. v. Barr*, 262 Va. 1, 1 (2001) (deciding that where there is an independent basis for the judgment that is not challenged on appeal, the Court cannot reach the merits of those errors assigned by the appellant).

"That said, we still must satisfy ourselves that the alternative holding is indeed one that (when properly applied to the facts of a given case) would legally constitute a freestanding basis in support of the trial court's decision." *Johnson*, 45 Va. App. at 117. "But, in making that decision, we do not examine the underlying merits of the alternative holding—for that is the very thing being waived by the appellant as a result of his failure to raise the point on appeal." *Id.*; *see Ferguson*, 287 Va. at 452-53 (declining to review the "correctness" of the circuit court's ruling on separate and independent grounds).

The record supports the circuit court's finding that termination of mother's parental rights under Code § 16.1-283(C)(2) was in the child's best interest. "[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)).

Here, the Department removed the child after he suffered extensive, suspicious injuries. Although the Department offered mother numerous services, the circuit court concluded that mother had not adequately addressed the circumstances that led to the child's removal. Mother dropped out of school and failed to engage in therapeutic services and parenting classes. Moreover, at the time of the circuit court hearing, the child had been in foster care for over 18 months. During that time, the child had received extensive medical care and was thriving in foster care. "It is clearly not in the

best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 322 (2013) (quoting *Kaywood v. Halifax Cnty. Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990)).

Based on the record, we are satisfied that Code § 16.1-283(C)(2), when properly applied to the facts, legally constitutes a freestanding, separate, and independent basis in support of the circuit court's decision to terminate mother's parental rights and approve the goal of adoption. Therefore, we will not reverse the decision below.

CONCLUSION

There was sufficient evidence to support the trial court's dispositional finding of abuse and neglect, including mother's inconsistent statements and medical testimony on the non-accidental nature of the injuries, as well as the fact that these injuries were suffered over a period of time. Mother did not refute any of the medical testimony regarding the non-accidental nature of the injuries nor did she provide rationale for her inconsistent stories. Furthermore, the circuit court did not err in terminating mother's rights because it had two independent grounds for terminating mother's rights, one of which mother does not challenge. Even if mother was correct in her assertion that there were no "aggravating circumstances," this Court would nevertheless be compelled to affirm the circuit court because mother did not challenge the independent ground for the court's termination decision under Code § 16.1-283(C)(2). For these reasons, we affirm the circuit court's ruling.

*Affirmed.*